THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE LESLIE RAY POWELL, Defendant-Appellant.

Fourth District    No. 4—94—0805

Opinion filed June 5, 1996.

Daniel D. Yuhas and John M. McCarthy, both of State Appellate Defender's Office, of Springfield, for appellant.

Michael D. Clary, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In December 1993, a jury found defendant, George Leslie Ray Powell, guilty of three counts of aggravated criminal sexual assault (720 ILCS 5/12—14(b) (West 1992)) involving three separate acts of sexual penetration by defendant, who was then 31 years old, with K.C., who was under 13 years of age when the acts were committed. The trial court later imposed consecutive sentences of 30 years on each count. Defendant appeals, arguing that (1) his trial counsel repeatedly ignored defendant's request for a bench trial instead of a jury trial; and (2) defendant received ineffective assistance of counsel.

We affirm.

# I. BACKGROUND

Because defendant does not challenge the sufficiency of the evidence, we need not describe it at length. The State's case consisted primarily of the testimony of K.C. (10 years old at the time of trial), who explained how defendant, when he was dating K.C.'s mother, would occasionally spend the night at the residence K.C. shared with her mother and two younger brothers. K.C. testified that on many such occasions, defendant would visit her bedroom at night and perform various acts of sexual penetration upon her. When K.C. moved away from her mother to live with her father and stepmother, she told her stepmother about defendant's conduct. The physician who subsequently examined K.C. opined that she had been sexually assaulted, but he was unable to determine when because her injuries appeared healed.

Two witnesses testified on behalf of defendant (essentially stating that K.C. seemed comfortable around men and never liked defendant), but defendant himself did not testify.

# II. ANALYSIS

## A. Defendant's Claim That He Wanted a Bench Trial Instead of a Jury Trial

The State initially charged defendant with these crimes in April 1993, and the trial court then appointed the public defender to represent him. On October 1, 1993, the court set the matter for jury trial on December 6, 1993. On November 9, 1993, attorney Walter Clifton entered his appearance on behalf of defendant, and at Clifton's request, the case was continued. On December 20, 1993, the jury trial began, and it ended the following day with guilty verdicts.

In January 1994, Clifton filed a motion for new trial, and the trial court set a hearing on that motion and sentencing for February 25, 1994. On that date, defendant filed a *pro se* post-trial motion in which he alleged that Clifton was incompetent because, in part, Clifton advised defendant against a bench trial and not to testify on his own behalf. Defendant requested appointment of counsel to assist him with these claims. The court granted that request and reappointed the public defender.

At the hearing on his post-trial motion, defendant testified regarding his wish for a jury trial, as follows:

"Q. [Defendant], did you discuss with counsel, Mr. Clifton, the alternative methods of trial, of trial by judge or trial by jury?
A. Yes, I did.

Q. And did you make a determination as to which you were electing to do, trial by judge or trial by jury?

A. We discussed it. And I—it basically,—nothing was decided on until the last minute here in the courtroom. I was saying that I wanted a bench trial up until the jury was waiting to be called into the room to be picked, because the whole purpose of asking for a jury trial was to see what *** the State was going to offer ***.

But I told him that I wanted a bench trial, because I felt like that normal people could not be unprejudiced or impartial when—when the statement of a child was—was involved in the proceedings. I feel like most people *** are inclined to believe children. *** I feel like the judge would, being her job to be impartial, would look for the evidence instead of the fact that it was a child's word against an adult's word.

\* \* \*

Q. What did you say to him and what did he say to you at that time in the courtroom?

A. *** I said, I really don't want to take a jury trial. I think I would be better off with a bench. And he says, *** well, I think you ought to take the jury, *** because then all 12 of them have to find you guilty and not just one person. And then that was right before the jury was called in."

Clifton also testified at the hearing, as follows:

"Q. [D]id you discuss with [defendant] the option of taking a jury trial or a bench trial?

A. Yes, I did.

***

Q. [D]id you give him your advice as to what you felt was better?

A. Yes, I did. ***

Q. What did he say in response to that?

A. Well, he had noted or at least I had noted that he had a reluctance to taking a jury trial. That he had a preference for a bench trial. And I told him that my advice would be, between the two, a bench trial or a jury trial, it would be in his best interests to take a jury trial, because it's always better for 12 people to have to agree on a verdict than it would be for one person to have to make a decision about his guilt or innocence.

Q. *** Did he instruct you *** to change the jury trial to a bench trial?

A. I don't think that he did. I'm not sure. He may have. I don't think that I would have given that much credence. I don't recall, as I sit here right now, *** whether he told me that he wanted me to *** change it from a jury trial to bench trial or at any point in

time to waive jury, which I think he had a right to do up until the jury returned a verdict.

However, I do recall him telling me right before the jury was being selected that he wanted to have a bench trial. And I think his family also expressed that intention or desire to me that they did not think that a jury trial was going to be the appropriate disposition for this case, that a bench trial would be more appropriate. And I tried to explain to them at that point in time along with explaining it to [defendant] that it was my advice to take a jury trial."

Two weeks after the hearing, the trial court entered a written order denying the post-trial motion, which stated, in relevant part, as follows:

"As to Defendant's argument that his counsel, who was privately retained, did not adequately advise him of the risk of trial by jury as opposed to a bench trial or the possible benefits of a trial by bench and advised him to take a jury trial, it is clear that Mr. Clifton did recommend to the Defendant that he take a trial by jury because he would have twelve people who would have to agree upon a verdict in order to convict the Defendant. Therefore, counsel did advise the Defendant of his respective trial rights and it is certainly within the realm of professional tactics to recommend a trial by jury in these circumstances. Further, the Defendant had previous contacts with the Court and had been previously involved in both bench and jury proceedings. Therefore, the Defendant did have experience with previous criminal proceedings. At no time did the Defendant advise the Court in any manner prior to this Amended Post-trial Motion that he wanted to have a trial by bench."

Based on this record, defendant argues on appeal that he "repeatedly requested a bench trial but that defense counsel ignored these requests." Defendant claims that the record establishes "that defense counsel disregarded [defendant's] desire for a bench trial[ ] *** [in] violation of the defendant's personal right to a bench trial under the Illinois Constitution. See *People ex rel[.] Daley v[.] Joyce*, 126 Ill. 2d 209, 533 N.E.2d [873] (1988)." Defendant also argues that "[d]efense counsel made clear that he had a personal preference for a jury trial and he decided to go forward with the jury trial regardless of the defendant's wishes."

●1 Although we think defendant's argument mischaracterizes the record regarding Clifton's discussion with defendant on the desirability of a jury trial, we choose to address it as if—as defendant claims on appeal—defendant wanted a bench trial all along and Clifton never so informed the court. We do so because of the importance of

our holding rejecting this argument, as follows: a jury trial is the norm for a felony case and a bench trial is the exception; therefore, a defendant who wishes a bench trial instead of a jury trial must make his position known to the trial court if his trial attorney fails to do so. If a defendant fails to speak out, as here, to make his desire for a bench trial known when the trial court begins the process of selecting and impaneling a jury, we will not entertain his later, after-the-fact claim that he really wanted a bench trial all along.

In support of this holding, we note that both the federal and Illinois Constitutions explicitly speak of a defendant's right to a *jury* trial, but neither speaks of a defendant's right to a *bench* trial. See U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. (Indeed, we note that defendants in federal criminal proceedings have no such right; instead, bench trials occur only if the defendant's request for a jury waiver has "the approval of the court and the consent of the government." Fed. R. Crim. P. 23(a). Further, we note that section 115—1 of the Code of Criminal Procedure of 1963 indicates that a jury trial shall be the norm and a bench trial the exception by providing as follows: "All prosecutions except on a plea of guilty or guilty but mentally ill shall be tried by the court and a jury unless the defendant waives a jury trial in writing." 725 ILCS 5/115—1 (West 1992).

Even at its most efficient, the process of selecting a jury in a criminal case takes a considerable amount of time—usually at least an hour or more. A defendant sitting in a courtroom watching this process could hardly be confused as to what is taking place. Thus, we have no sympathy for this defendant or any other who sits through that entire process and—while supposedly wishing for a bench trial—says *nothing* to the trial court even though, as defendant claims here, his trial counsel has failed to request a bench trial in accordance with defendant's wishes.

The argument defendant makes here could be made in every case in which a defendant is convicted by a jury and the trial court did not explicitly inquire of defendant, before or during the jury selection process, whether he in fact wished to have a jury trial. We decline to impose on the trial courts the burden of making such inquiries, both because those courts are already sufficiently burdened with other, important procedural concerns and because imposing such a burden would be unwarranted.

## B. Ineffective Assistance of Counsel

Defendant also argues on appeal that Clifton provided him with ineffective assistance of counsel "in two major ways." First, Clifton advised him to proceed with a jury trial because Clifton erroneously

believed defendant had the constitutional right to waive a jury trial at any point in the proceedings until the jury rendered its verdict; and second, Clifton advised him not to testify in his own behalf because defendant's past criminal record might prejudice the jury. (The record shows defendant was convicted in 1985 of aggravated criminal sexual abuse, sentenced to seven years in prison, and released in 1988.) Defendant claims that while this advice is sound,

> "where a defendant, like [him], has several prior convictions that might improperly influence a jury ***, if [he] had been allowed to proceed with a bench trial as he requested, the risk of prejudice is restricted because a judge would not consider his past record in an improper way."

Thus, defendant claims that Clifton rendered him ineffective assistance of counsel because (1) Clifton advised defendant to have a jury trial based on a misapprehension of the law, and (2) Clifton's advice not to testify was not soundly based. In support of his first claim, defendant cites *People v. Otis*, 135 Ill. App. 3d 718, 479 N.E.2d 40 (1985). We deem defendant's ineffective assistance argument groundless.

In *People v. Brooks*, 251 Ill. App. 3d 927, 933-34, 623 N.E.2d 1380, 1386 (1993), this court addressed the issue of ineffective assistance of counsel and wrote the following:

> "Ordinarily, to prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) counsel's substandard representation so prejudiced the defense as to deny the defendant a fair trial. (*People v. Horton* (1991), 143 Ill. 2d 11, 23, 570 N.E.2d 320, 325.) *** *Allegations arising from matters of judgment or trial strategy will not support a claim of ineffective assistance of counsel. People v. Clark* (1991), 207 Ill. App. 3d 439, 450, 565 N.E.2d 1373, 1380." (Emphasis added.)

■ We agree with the trial court that an attorney's recommendation to his client to have a jury trial in a criminal case, as opposed to a bench trial, constitutes a matter of strategy or tactics and cannot support a claim of ineffective assistance of counsel. The record shows that Clifton told defendant that the State's case here rested essentially on the largely uncorroborated testimony of an eight-year-old girl. Given the State's burden of proving defendant guilty beyond a reasonable doubt, Clifton's comment that it is harder for the State to get 12 people to agree than one is self-evidently reasonable and constitutes a matter of judgment and trial strategy.

We also reject defendant's claim that Clifton provided ineffective assistance of counsel because of his allegedly mistaken belief that defendant could later waive his right to a jury trial even after the jury trial had begun. The only authorities on point are *People v. Stamos*,

214 Ill. App. 3d 895, 574 N.E.2d 184 (1991), and *People v. Zemblidge*, 104 Ill. App. 3d 654, 432 N.E.2d 1138 (1982), but in both of those cases, the trial court denied the defendants' jury waiver which occurred *after all the evidence had been presented*, a situation far different from the present case. The *Stamos* court agreed with the holding in *Zemblidge* that "a defendant has no *automatic* right to waive a jury after trial commences." (Emphasis added.) *Stamos*, 214 Ill. App. 3d at 904, 574 N.E.2d at 189. However, a trial court still possesses the *discretion* to grant a jury waiver, even at that late point in the proceedings. Thus, the worst that may be said of Clifton's advice regarding a jury waiver in this case is that he believed defendant had a right to waive jury later in the proceedings, as opposed to the matter being left to the court's discretion. However, defendant never sought a jury waiver, so the matter is entirely moot.

Additionally, Clifton's stated concerns about the issue of the admissibility of defendant's prior record if he were to testify were soundly based as well. No counsel can predict with certainty how a trial court will treat a defendant's prior conviction offered for impeachment purposes. See *People v. Bramlett*, 276 Ill. App. 3d 201, 211, 658 N.E.2d 510, 517 (1995) (Steigmann, J., specially concurring) ("uncertainty abounds in the appellate and trial courts regarding" the handling of impeachment by prior conviction). Clifton's concerns about how a felony conviction might seriously damage his client's credibility in the eyes of the jury—even if it were to be the "mere fact" method of impeachment—are again self-evidently reasonable.

Last, defendant seems to argue that, in a bench trial, the trial court would disregard defendant's felony conviction if the case came down to a "swearing contest" between defendant and K.C. However, defendant fails to explain why this is so, and we view this argument as groundless speculation. We note that properly admitted impeachment evidence is just that, no matter whether the trier of fact receiving that evidence is a jury or the judge.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GREEN and KNECHT, JJ., concur.