# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Kiefel*, 2013 IL App (3d) 110402

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY W. KIEFEL, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-11-0402 |
| Filed | March 25, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction and sentence for unlawful possession of a controlled substance following a jury trial were affirmed over his contentions that he did not voluntarily and knowingly waive his right to a bench trial and that his counsel was ineffective in failing to move to quash his arrest and suppress evidence, since his claims were meritless, especially when he never raised the issue of having a bench trial in the trial court and defendant's counsel clearly recognized that any motion to quash and suppress would have been futile. |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 10-CF-632; the Hon. H. Chris Ryan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Peter A. Carusona, of State Appellate Defender's Office, of Ottawa, and James K. Leven (argued), of Chicago, for appellant.

Brian Towne, State's Attorney, of Ottawa (Terry A. Mertel and Justin A. Nicolosi (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.

Justices Holdridge and McDade concurred in the judgment and opinion.

## OPINION

¶ 1 A La Salle County jury convicted the defendant, Terry W. Kiefel, on one charge of unlawful possession of a controlled substance. The trial court sentenced the defendant to four years in the Illinois Department of Corrections.

¶ 2 The defendant appeals, claiming that he did not voluntarily, knowingly and intelligently waive his right to a bench trial and that he received ineffective assistance of counsel when his trial attorney failed to file a motion to quash arrest and suppress evidence. We affirm.

¶ 3 BACKGROUND

¶ 4 Parole agents and police arrested defendant on December 29, 2010, when a search of his apartment by parole officers yielded a tinfoil pipe believed to be cocaine residue. The State ultimately charged defendant with unlawful possession of less than 15 grams of a substance containing cocaine, a controlled substance (a Class 4 felony), in violation of the Illinois Controlled Substances Act (720 ILCS 570/402(c) (West 2010)). When arrested, defendant was on mandatory supervised release (MSR) following a previous conviction for possession of a controlled substance.

¶ 5 At trial, the State called parole agent Steven Peters as its first witness. On the morning of December 29, 2010, Peters, along with fellow parole agent Tim Plankenhorn, went to defendant's apartment in Peru, Illinois, to interview defendant. The defendant opened the door and allowed Peters and Plankenhorn inside. Upon entering the apartment, the agents immediately handcuffed the defendant. Peters testified that this was standard operating procedure when searching a parolee or his surroundings. Peters proceeded to search the apartment and found a plastic grocery bag on the floor that was tied shut. Along with food wrappers and other trash, the grocery bag contained a piece of tinfoil that had been rolled up and burned on one end. Peters called the Peru police department. When he discovers items that he believes contain drugs, it is his responsibility as a parole agent to call the local police department so that it can collect the evidence and take the offender into custody for

questioning. Detective Sergeant Degroot and two uniformed officers from the Peru police department arrived on the scene. Peru police took custody of both the evidence and defendant.

¶ 6    Sergeant Degroot was the State's next witness. Degroot responded to the call at defendant's apartment, where he met Agent Peters. Upon arrival, he observed that defendant was handcuffed; Degroot advised defendant that he was under arrest. At the station, Degroot interviewed defendant and had the "pipe" field tested. During the interview, Degroot read defendant his *Miranda* rights, which defendant indicated he understood and he initialed documentation to that effect. Defendant stated that he was drinking at a pub in La Salle County when he ran into an old friend, Pat Innis. Defendant and Innis returned to defendant's apartment and smoked crack cocaine in the tinfoil pipe. Defendant declined Degroot's offer to reduce his oral statement to writing.

¶ 7    The State then called Angela Nealand to the stand. Nealand is a forensic scientist specializing in drug chemistry with the Illinois State Police crime lab. The trial court found her qualified as an expert witness. Nealand testified that the tinfoil pipe tested positive for cocaine.

¶ 8    Defendant took the stand and testified on his own behalf. He acknowledged that at the time of his arrest in December, he was on MSR for a prior conviction for possession of a controlled substance. According to defendant, he was alone in his apartment when Agent Peters visited him and had no idea that the tinfoil pipe that was discovered was in the apartment. Defendant went on to testify that a few days prior to Agent Peters' visit, he had gone to a bar and had run into to Pat Innis, an old friend from California. Defendant was waiting for a cab to take him home, but Innis offered to give him a ride.

¶ 9    Once back at defendant's apartment, Innis pulled out a tinfoil pipe, lit it and asked if defendant wanted to take a hit. Defendant admitted to taking one hit off of the pipe, then handed it back to Innis and told him he had to take it when he left. Defendant thought Innis took the pipe with him when he left. He did not see Innis put the pipe in the grocery bag.

¶ 10    Defendant denied telling Degroot that he and Innis made the pipe. He further denied that he told Degroot during the interview that he and Innis went to the apartment to smoke cocaine. Defendant testified that he did not know what was in the pipe when he smoked it.

¶ 11    The jury found defendant guilty of possession of a controlled substance. The trial court entered judgment on the verdict and ultimately imposed a sentence of four years' imprisonment and one year of MSR. Defendant filed a posttrial motion; the trial court denied it. This timely appeal followed.

¶ 12                                    ANALYSIS

¶ 13                          I. Waiver of a Bench Trial

¶ 14    The defendant first argues that his conviction should be reversed because the record fails to demonstrate that he knowingly, intelligently and voluntarily waived his constitutional right to a bench trial. As we explain below, this argument lacks even the slightest scintilla of merit.

¶ 15     We review *de novo* defendant's claim that the lower court violated his constitutional rights. *People v. Carini*, 357 Ill. App. 3d 103, 113 (2005). At the outset, we note that defendant did not request a bench trial below. He did not raise this issue in a posttrial motion. Defendant similarly does not contend that he signed a written jury waiver prior to trial, or that his trial counsel, the judge, or the State prevented him from waiving his right to a jury trial. Nonetheless, defendant asserts that this court should reach the merits of the issue under the plain-error rule.

¶ 16     A defendant must object at trial and in a posttrial motion to preserve potential errors for review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). In this case, defendant clearly failed to preserve his arguments for appeal, and therefore, this court may only review the issue for plain error. "Plain-error review is appropriate under either of two circumstances: (1) when 'a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error'; or (2) when 'a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *People v. Eppinger*, 2013 IL 114121, ¶ 18 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

¶ 17     Defendant does not argue that the evidence was closely balanced. Instead, he argues that the second prong of the plain-error rule applies. Specifically, defendant contends that the right to a bench trial is a fundamental state constitutional right and is coextensive with the right to a jury trial; therefore, this court should find that his right to a bench trial was not validly waived on the record. "In order to obtain relief [under the second prong], defendant must demonstrate not only that a clear and obvious error occurred [citation], but that the error was a structural error [citation]." *Id.* ¶ 19. Before reaching that issue, we must first determine whether there was error; obviously without error there can be no plain error.

¶ 18     Defendant cites to a number of cases, none of which support his theory. For example, in *People ex rel. Daley v. Joyce*, 126 Ill. 2d 209, 222 (1988), our supreme court held that the right to a jury trial necessarily encompasses the right to waive it. The decision to waive his right to a jury trial lies solely with the accused, and unlike under federal law, the State does not have the right to object to the accused's waiver of a jury trial. Specifically, the *Joyce* court held that section 115-1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, ¶ 115-1 (as amended by Pub. Act 84-1428 (eff. July 1, 1987))) providing the State with the right to a jury in certain criminal trials, was unconstitutional. *Id.* This holding clearly implies the fundamental right to a bench trial; the decision as to whether to be tried by judge or jury now rests solely with the accused. It does not, as defendant asserts, require that a defendant be given admonishments of his right to a bench trial or that a written waiver of a bench trial be executed in order to receive a jury trial.

¶ 19     Additionally, our supreme court has rejected similar arguments in at least two separate opinions. In *People v. Wallace*, 48 Ill. 2d 252 (1971), the defendant argued that his guilty plea was invalid since he was not advised of his constitutional right to a bench trial by the trial judge. In denying the defendant's claim, the court held that "an appropriate admonition and understanding of a right to trial by jury comprehends advice and understanding of a right to trial without jury." *Id.* at 253; see also *People v. Goodwin*, 50 Ill. 2d 99, 103 (1971).

¶ 20 We also find *People v. Powell*, 281 Ill. App. 3d 68 (1996), particularly instructive. In *Powell*, the defendant was convicted of aggravated criminal sexual assault following a jury trial. *Id.* at 69. In his posttrial motion for a new trial, the defendant argued that his convictions should be overturned because his trial counsel disregarded his desire and right to a bench trial under the Illinois Constitution, citing to *People ex rel. Daley v. Joyce*. *Id.* at 72. In rejecting this argument, the court explained, "a jury trial is the norm for a felony case and a bench trial is the exception; therefore, a defendant who wishes a bench trial instead of a jury trial must make his position known to the trial court if his trial attorney fails to do so. If a defendant fails to speak out, as here, to make his desire for a bench trial known when the trial court begins the process of selecting and impaneling a jury, we will not entertain his later, after-the-fact claim that he really wanted a bench trial all along." *Id.* at 73.

¶ 21 Whereas the *Powell* defendant argued that he expressed his desire for a bench trial to counsel, defendant herein does not contend that he told his trial counsel that he preferred a bench trial and those wishes went unheeded. In fact, his preference for a bench trial was not voiced until this appeal. The *Powell* court observed, "[t]he argument defendant makes here could be made in every case in which a defendant is convicted by a jury and the trial court did not explicitly inquire of defendant, before or during the jury selection process, whether he in fact wished to have a jury trial. We decline to impose on the trial courts the burden of making such inquiries, both because those courts are already sufficiently burdened with other, important procedural concerns and because imposing such a burden would be unwarranted." *Id.*

¶ 22 We find no error, plain or otherwise.

¶ 23                              II. Ineffective Assistance of Counsel

¶ 24 Defendant argues that his trial counsel provided ineffective assistance for not moving to quash his arrest and suppress the evidence that was, according to defendant, obtained as a result of his warrantless arrest. This argument, too, lacks merit.

¶ 25 Under the two-pronged test enunciated in *Strickland v. Washington*, 466 U.S. 668, 688 (1984), a defendant alleging ineffective assistance of counsel will prevail only where he or she is able to show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Albanese*, 104 Ill. 2d 504, 525 (1988), adopting *Strickland*, 466 U.S. 668.

¶ 26 "To prevail on a claim that trial counsel was ineffective for failing to file a motion to quash and suppress, a defendant must show a reasonable probability that the motion would have been granted and the trial outcome would have been different." *People v. Bailey*, 375 Ill. App. 3d 1055, 1059 (2007) (citing *People v. Sterling*, 357 Ill. App. 3d 235, 247 (2005)). This he cannot do.

¶ 27 The defendant's ineffective assistance argument hinges entirely on his assertion that when Agent Peters placed him in handcuffs before conducting a search of defendant's residence, he was under arrest. Defendant argues that this was an unlawful, warrantless arrest in his home and, therefore, the evidence discovered and statements made after the arrest must

be suppressed as fruit of the poisonous tree.

¶ 28 Before turning to the issue of whether defendant was actually arrested prior to the search, it is necessary to address the severely curtailed fourth amendment protections afforded parolees. In *Samson v. California*, 547 U.S. 843 (2006), the Supreme Court held that the fourth amendment does not prohibit a police officer from conducting a suspicionless search of a parolee. Considering the totality of the circumstances, including the parolee's agreement to the search condition as a requirement for his release from confinement, the parolee did not have an expectation of privacy that society would recognize as legitimate. *Id.* at 852. Our supreme court affirmed the principles espoused in *Samson* in *People v. Wilson*, 228 Ill. 2d 35, 52 (2008), for Illinois parolees, and extended the constitutionality of suspicionless searches of the parolee to the parolee's home.

¶ 29 Indeed, such searches have been codified pursuant to section 3-3-7(a)(10) of the Unified Code of Corrections, which provides that "[t]he conditions of every parole and mandatory supervised release are that the subject: *** (10) consent to a search of his or her person, property, or residence under his or her control." 730 ILCS 5/3-3-7(a)(10) (West 2010). It necessarily follows that parole agents Peters and Plankenhorn were justified in their search of defendant's residence. Agent Peters was further justified in handcuffing defendant prior to conducting the search of his residence in the name of officer safety and, in doing so, did not effectuate an arrest. See *People v. Arnold*, 394 Ill. App. 3d 63, 71 (2009) (recognizing that there are situations in which concerns for the safety of the police officer or the public justify handcuffing the detainee for the brief duration of an investigatory stop); see also *People v. Walters*, 256 Ill. App. 3d 231, 237 (1994) (finding that not all circumstances wherein handcuffing and detention occur necessarily convert a lawful *Terry* stop into an arrest). Agent Peters testified that it was routine procedure to handcuff a parolee when conducting a search of his or her residence, so that in the event contraband was found, he would have control over the situation. The rationale behind this protocol is clear–no reasonable law enforcement officer would turn his or her back on an unrestrained parolee to conduct a search.

¶ 30 With that being said, whether or not defendant was under arrest has no bearing on his status as a parolee or the legality of the search. The limited expectation of privacy, coupled with defendant's conditions of mandatory supervised release, gave the parole officers the right to search defendant's residence. While we find that the handcuffing in this instance did not constitute an arrest, even if it had the outcome would not change. For example, had the officers told defendant he was under arrest, the search of the residence was still legal under *Wilson*, 228 Ill. 2d at 52, and within the terms of defendant's mandatory supervised release. That is, whether under arrest or not, defendant was a parolee; his person as well as property under his control were subject to search.

¶ 31 Trial counsel undoubtedly recognized that a motion to suppress would be futile. Counsel cannot be ineffective for failing to file a meritless motion. See *People v. Givens*, 237 Ill. 2d 311, 331 (2010). Accordingly, defendant's claim of ineffective assistance of counsel must fail.

¶ 32                        CONCLUSION

¶ 33        For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed.

¶ 34        Affirmed.