# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*People v. Brown*, 2013 IL App (2d) 110327

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES J. BROWN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-0327 |
| Filed | April 12, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for felony domestic battery was upheld over his contentions that he did not knowingly and voluntarily waive a bench trial and that his rights under the confrontation clause were violated by the admission of his wife's testimony that her son told her that defendant had pushed him, since the right to a bench trial is one defendant must assert, and the son's hearsay statement was not testimonial, but was intended to meet an ongoing emergency arising from defendant's conduct. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 10-CF-2984; the Hon. Gary V. Pumilia, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

James K. Leven, of Chicago, for appellant.

Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer
and Victoria E. Jozef, both of State's Attorneys Appellate Prosecutor's
Office, of counsel), for the People.

Panel

JUSTICE HUDSON delivered the judgment of the court, with opinion.

Justices Jorgensen and Birkett concurred in the judgment and opinion.

**OPINION**

## I. INTRODUCTION

Defendant, James J. Brown, was convicted of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2010)), a felony in this case. He now appeals, raising two issues. First, he contends that the record does not disclose that he knowingly, voluntarily, and intelligently waived his right to a *bench* trial. Second, he alleges a violation of the confrontation clause (U.S. Const., amend. VI) in accordance with *Crawford v. Washington*, 541 U.S. 36 (2004), and its progeny. We find neither argument well taken and affirm.

## II. BACKGROUND

The State obtained a three-count indictment against defendant, charging him with felony domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2010)). Count I alleged that he committed domestic battery by striking Kathy Brown (his wife). Count II alleged that he committed the offense by throwing milk in the face of Caden (Kathy's five-year-old son). Count III alleged that defendant committed the offense by pushing over a chair in which Caden was sitting. Each count alleged that defendant had previously been convicted of domestic battery in an unrelated case.

Prior to the trial, the State brought a motion *in limine* seeking a ruling regarding the admissibility of testimony from Kathy that Caden told her that defendant had pushed him. The State argued that this statement was admissible as an excited utterance. Defendant responded that the statement was not an excited utterance and that, as testimonial hearsay, its admission would violate the dictates of *Crawford*, 514 U.S. 36. The trial court determined that the statement was not testimonial and was thus outside the scope of *Crawford* and allowed its admission as an excited utterance.

At trial, Sean Welsh, a Rockford police officer, first testified for the State. On August 22, 2010, Welsh was dispatched to 1712 Tenth Street, along with Officer Richard Dodd. Dodd approached the residence and spoke with Kathy. Caden was also present. After learning what

had transpired, Dodd entered the residence to look for defendant. Defendant was not present. Welsh and Dodd searched the area and then drove around looking for defendant. They did not find him. Subsequently, they returned to 1712 Tenth Street. Welsh went to the back of the house, and Dodd went to the front. Dodd encountered defendant and spoke with him. Welsh noted that defendant's speech was slurred, his eyes were "glossy," his gait was unsteady, and his breath smelled of alcohol. Defendant was arrested. During cross-examination, Welsh testified that he did not recall speaking to Kathy. He did, however, have contact with Caden. Welsh did not observe any injuries to Caden or anything unusual about him.

¶ 7      The State next called Kathy. She testified that, in August 2010, she and defendant were living at 1712 Tenth Street along with Kathy's two children–Caden and 20-year-old Corey. Kathy testified that, though defendant was not Caden's biological father, he had "been his father since he was born." On August 22, 2010, Kathy got up and made Caden breakfast. She "had him sitting in the dining room eating." She then went out on the porch to have a cigarette. She could "hear what was going on in the house" from the porch.

¶ 8      Kathy heard defendant come out of the bedroom and yell at Caden to eat his breakfast. She heard Caden "whining." She then heard a "thump," so she went back into the house. The chair in which Caden had been sitting had been pushed over, and Caden was "sitting on the chair when it fell, so he kind of went with the chair." It was "[j]ust a few seconds" from the time she heard the "thump" until she observed Caden on the floor. Defendant was in the dining room. Corey was lying on the couch in the living room. Caden was crying and appeared upset. He got up and stood by the wall. Kathy asked him what happened and he told her that "Daddy pushed him." An objection by defendant was overruled at this point.

¶ 9      Kathy told defendant to "get the heck out." Defendant stated that he was not going anywhere. They argued; then, defendant punched Kathy in the face. Next, defendant turned around, picked up a glass of milk, and threw it in Caden's face. Caden started crying again. Kathy stated that, though it was painful when defendant hit her, she did not sustain any visible injuries. Caden remained near the wall throughout this altercation. Kathy took Caden and cleaned him up; defendant returned to the bedroom. Initially, Kathy did not contact the police; however, she later called them using Corey's cell phone, as defendant had broken the house phone.

¶ 10      During cross-examination, Kathy testified that it was about 9 or 9:30 a.m. when she made breakfast for Caden. The altercation took place between 20 and 30 minutes later. She acknowledged that she did not call the police until after 7 p.m. She stated that Caden was not physically injured.[1]

¶ 11      Corey next testified for the State. On the morning of August 22, 2010, Corey was lying on the couch in the living room. He heard a crash. He started to get up, but then Kathy came running by. Corey could see into the dining room. He saw Kathy and defendant argue; then,

_____

[1]Kathy gave considerable additional testimony on both direct and cross-examination regarding events that transpired over the course of the day. As this testimony does not shed any light on the issues presented in this appeal, we will not recount it here.

defendant punched Kathy and threw milk in Caden's face. Caden was upset and crying. Defendant and Kathy argued periodically throughout the day. Eventually, the police were called. On cross-examination, Corey stated that he did not speak with the police when they arrived. He agreed that, while he did see Caden on the floor, he did not see how Caden got there. He "just heard the noise." Corey acknowledged that his relationship with defendant is poor.

¶ 12 Finally, the State called Dodd. At about 7:30 p.m. on August 22, 2010, he and Welsh were dispatched to 1712 Tenth Street. Dodd spoke with Kathy, and Welsh spoke briefly with Caden. They entered the house to look for defendant, but defendant was not there. They left to look for defendant elsewhere. Subsequently, they returned and apprehended defendant.

¶ 13 Dodd took a statement from Kathy. Kathy spoke, and Dodd wrote down what she said. He wrote the statement "in her first person" and read it back to her to verify that the information was correct. Kathy signed the statement. Dodd did not write down "every single detail." During cross-examination, Dodd stated that he did not observe any injuries to Kathy or any signs of a struggle in the house. When Dodd first encountered defendant, defendant was "quiet, collected and cooperative." Following Dodd's testimony, the State rested and the defense did as well.

¶ 14 Following the trial, defendant was acquitted of the first count but convicted on the latter two. The trial court sentenced defendant on only the third count, finding that the facts underlying counts II and III were "practically simultaneous." Defendant was sentenced to three years' imprisonment and four years' mandatory supervised release. This appeal followed.

¶ 15                                                    III. ANALYSIS

¶ 16 On appeal, defendant raises two issues. First, he alleges error in that the record does not show a proper waiver of his right to a bench trial. Second, he argues that Kathy's testimony that Caden told her that defendant had pushed him violated his rights under the confrontation clause. U.S. Const., amend. VI. We disagree with both contentions.

¶ 17                           A. Waiver of Defendant's Right to a Bench Trial

¶ 18 Defendant first argues that we should reverse and remand for a new trial because the record does not disclose that he made a knowing, voluntary, and intelligent waiver of his right to a bench trial. In Illinois, a criminal defendant has a state constitutional right to a bench trial. *People ex rel. Daley v. Joyce*, 126 Ill. 2d 209, 222 (1988). However, we are aware of no case, rule, or statute that requires that the record must show that the waiver of this right is knowing, voluntary, and intelligent. Defendant calls our attention to no such authority. Instead, defendant relies on case law regarding the waiver of a defendant's right to a jury trial, asserting that the right to a bench trial should be accorded equal dignity. Whether a defendant must make a knowing, voluntary, and intelligent on-the-record waiver of the right to a bench trial presents a question of law and is therefore subject to *de novo* review (*In re R.A.B.*, 197 Ill. 2d 358, 362 (2001)).

¶ 19 Unquestionably, the right to a trial by jury is fundamental. *Blakely v. Washington*, 542 U.S. 296, 305-06 (2004) (the right to a jury trial "is no mere procedural formality, but a fundamental reservation of power in our constitutional structure"); *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 24 ("Like the right to a trial by an unbiased jury, the right to a unanimous verdict is among the most fundamental of rights in Illinois."). Accordingly, any waiver of this right must be knowing, voluntary, and intelligent. See *People v. Todd*, 178 Ill. 2d 297, 316 (1997). Moreover, "[i]t is axiomatic that the waiver of the right to a trial by jury cannot be presumed from a silent record." *People v. Witt*, 227 Ill. App. 3d 936, 944 (1992). Defendant argues that in Illinois the right to a bench trial should be accorded equal dignity.

¶ 20 To this end, defendant sets forth language from Illinois cases purporting to show the fundamental nature of the bench-trial right. For example, in *People v. Gersch*, 135 Ill. 2d 384, 392 (1990), our supreme court observed that "the constitutional right to a bench trial in Illinois has existed since statehood." In *Joyce*, 126 Ill. 2d at 222, the court stated:

> "The dimension of our constitutionally protected right to a trial by jury under the 1870 constitution is clear under the *Fisher* and *Spegal* analyses, and clearly encompassed the right of an accused to waive trial by jury. That right, as it was understood and enjoyed by the people of this State ('heretofore enjoyed'), was adopted and incorporated in our 1970 constitution. Short of a constitutional amendment to that effect, the legislature cannot now deprive an accused in Illinois of any part of that constitutionally protected right."

Similarly, in *People v. Hoffman*, 379 Ill. 318, 321 (1942), the supreme court observed that "[t]he right to a trial by an impartial judge where a jury is waived is equally guaranteed and safeguarded by the constitution."

¶ 21 However, even if the right to a bench trial is of stature equal to the right to a jury trial, it does not automatically follow that the procedures used to safeguard those rights must be the same. In *People v. Powell*, 281 Ill. App. 3d 68, 73 (1996), the Fourth District of this appellate court explained that the onus to assert the right to a bench trial is on a criminal defendant:

> "[A] jury trial is the norm for a felony case and a bench trial is the exception; therefore, a defendant who wishes a bench trial instead of a jury trial must make his position known to the trial court if his trial attorney fails to do so. If a defendant fails to speak out, as here, to make his desire for a bench trial known when the trial court begins the process of selecting and impaneling a jury, we will not entertain his later, after-the-fact claim that he really wanted a bench trial all along.
>
> In support of this holding, we note that both the federal and Illinois Constitutions explicitly speak of a defendant's right to a *jury* trial, but neither speaks of a defendant's right to a *bench* trial. See U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. [ ]Indeed, we note that defendants in federal criminal proceedings have no such right; instead, bench trials occur only if the defendant's request for a jury waiver has 'the approval of the court and the consent of the government.' Fed. R. Crim. P. 23(a). Further, we note that section 115-1 of the Code of Criminal Procedure of 1963 indicates that a jury trial shall be the norm and a bench trial the exception by providing as follows: 'All

prosecutions except on a plea of guilty or guilty but mentally ill shall be tried by the court and a jury unless the defendant waives a jury trial in writing.' 725 ILCS 5/115-1 (West 1992).

Even at its most efficient, the process of selecting a jury in a criminal case takes a considerable amount of time–usually at least an hour or more. A defendant sitting in a courtroom watching this process could hardly be confused as to what is taking place. Thus, we have no sympathy for this defendant or any other who sits through that entire process and–while supposedly wishing for a bench trial–says *nothing* to the trial court even though, as defendant claims here, his trial counsel has failed to request a bench trial in accordance with defendant's wishes.

The argument defendant makes here could be made in every case in which a defendant is convicted by a jury and the trial court did not explicitly inquire of defendant, before or during the jury selection process, whether he in fact wished to have a jury trial. We decline to impose on the trial courts the burden of making such inquiries, both because those courts are already sufficiently burdened with other, important procedural concerns and because imposing such a burden would be unwarranted." (Emphases in original.)

We find this reasoning persuasive here.

¶ 22    Moreover, we note that, where mutually exclusive, competing rights are involved, requiring admonishments can present certain problems. For example, a trial court need not advise a defendant of his or her right to testify nor must it obtain an on-the-record waiver of that right. *People v. Davis*, 378 Ill. App. 3d 1, 11 (2007). A defendant, of course, also has a right to refuse to testify. *People v. Vaughn*, 354 Ill. App. 3d 917, 924 (2004). Whether to advise a defendant regarding these rights is a matter within the discretion of the trial court. *People v. Peden*, 377 Ill. App. 3d 463, 471 (2007). However, a judge choosing to admonish a defendant on this subject must refrain from crossing into the realm of advocacy and not influence the defendant's decision regarding whether to testify. See *Vaughn*, 354 Ill. App. 3d at 925-26. The trial court "must be careful to issue admonishments regarding self-incrimination and the right not to testify without impairing the defendant's ability to present his defense." *Peden*, 377 Ill. App. 3d at 471. Many of the same concerns apply here; a judge admonishing a defendant regarding his right to a bench trial might well influence the defendant's decision regarding whether to exercise his or her right to a jury trial.

¶ 23    Indeed, our supreme court has set forth several reasons why a trial court need not admonish a defendant regarding his right to testify:

" 'At least seven reasons have been given for this conclusion: First, the right to testify is seen as the kind of right that must be asserted in order to be recognized. [Citation.] Second, it is important that the decision to testify be made at the time of trial and that the failure to testify not be raised as an afterthought after conviction. [Citation.] Third, by advising the defendant of his right *to* testify, the court could influence the defendant to waive his right *not to* testify, "thus threatening the exercise of this other, converse, constitutionally explicit and more fragile right." [Citation.] Fourth, a court so advising a defendant might improperly intrude on the attorney-client relation, protected by the

-6-

Sixth Amendment. [Citation.] Fifth, there is danger that the judge's admonition would introduce error into the trial. [Citation.] Sixth, it is hard to say when the judge should appropriately advise the defendant–the judge does not know the defendant is not testifying until the defense rests, not an opportune moment to conduct a colloquy. [Citation.] Seventh, the judge should not interfere with defense strategy. [Citation.]' " (Emphases in original.) *People v. Smith*, 176 Ill. 2d 217, 235 (1997) (quoting *United States v. Martinez*, 883 F.2d 750, 760 (9th Cir. 1989)).

Not all of these considerations apply here, but many do. First, as noted in *Powell*, this right likewise must be asserted. As for the second factor, we believe that a *post hoc* claim that a defendant actually wanted a bench trial would be similarly problematic. *Powell*, 281 Ill. App. 3d at 73 ("If a defendant fails to speak out, as here, to make his desire for a bench trial known when the trial court begins the process of selecting and impaneling a jury, we will not entertain his later, after-the-fact claim that he really wanted a bench trial all along."). Like the third factor, advising a defendant regarding a bench trial could discourage the exercise of the constitutionally explicit right to a jury trial. *Id.* ("[W]e note that both the federal and Illinois Constitutions explicitly speak of a defendant's right to a *jury* trial, but neither speaks of a defendant's right to a *bench* trial." (Emphases in original.)). As discussed above, there is a risk that a judge could assume the role of advocate and interfere with defense counsel's representation, as suggested by the fourth and seventh factors. Finally, the danger of error, as the fifth factor sets forth, would also seem to be present. Thus, as with whether to admonish a defendant regarding his or her right to testify, we hold that whether to admonish a defendant regarding his or her right to a bench trial is a matter within the trial court's discretion. It is a right that a defendant must assert. Accordingly, there is no need to obtain an on-the-record waiver of this right. As such, defendant's position in this case is untenable.

¶ 24                                    B. *Crawford* Violation

¶ 25     Defendant next alleges a violation of the rule set forth in *Crawford*, 541 U.S. 36. *Crawford* forbids the admission of testimonial hearsay unless the declarant is unavailable and the defendant had a previous opportunity to cross-examine the declarant. *People v. Ingram*, 382 Ill. App. 3d 997, 1001-02 (2008). Defendant contends that the admission of Kathy's testimony that Caden told her that defendant had pushed him was error. Resolution of this argument turns on whether Caden's statement was testimonial.

¶ 26     Generally speaking, a statement is testimonial if it is solemn and intended to establish some fact, like the testimony of a witness at a trial who is recounting past events. *People v. Stechly*, 225 Ill. 2d 246, 281-82 (2007). Statements about fault and identity are typically deemed testimonial. See *People v. Purcell*, 364 Ill. App. 3d 283, 297 (2006). However, statements made during the course of an ongoing emergency constitute an exception to this general rule. *People v. Lisle*, 376 Ill. App. 3d 67, 81 (2007); see also *Davis v. Washington*, 547 U.S. 813, 827 (2006) ("[T]he nature of what was asked and answered in *Davis*, again viewed objectively, was such that the elicited statements were necessary to be able to *resolve* the present emergency, rather than simply to learn (as in *Crawford*) what had happened in the past. That is true even of the operator's effort to establish the identity of the assailant, so

-7-

that the dispatched officers might know whether they would be encountering a violent felon." (Emphasis in original.)). Indeed, the Supreme Court, considering whether a statement made during the course of a 911 call was testimonial, observed that, while "one *might* call 911 to provide a narrative report of a crime absent any imminent danger, [the declarant's] call was plainly a call for help against a bona fide physical threat." (Emphasis in original.) *Davis*, 547 U.S. at 827. The declarant was facing an ongoing emergency. *Id.* The primary purpose of the statement was to meet that emergency. *Id.* at 828. In other words, it was not testimonial. *Id.*

¶ 27        Caden's statement was similarly intended to meet an ongoing emergency, namely, two incidents of domestic battery. It occurred between the points at which defendant pushed his chair over and defendant threw milk in his face. Specifically, according to Kathy's testimony: (1) defendant yelled at Caden and Kathy heard a "thump" (presumably Caden being pushed to the floor); (2) Kathy entered the room and saw Caden on the floor, crying; (3) Kathy asked what had happened and Caden explained how he had come to be lying on the floor; (4) Kathy told defendant to leave; (4) defendant refused and they argued; (5) defendant threw milk in Caden's face; and (6) Caden started crying again. Thus, Caden's statement occurred during a fast-paced confrontation and it concerned a threat to Caden's well being. As such, the statement was not testimonial. See *Lisle*, 376 Ill. App. 3d at 81 ("[The declarant] would, undoubtedly, have anticipated that identifying his assailant to his aunt would allow his aunt to take precautionary measures should the assailant also arrive at her residence. Therefore, [the declarant's] statement *** was nontestimonial in nature."). In sum, defendant's rights under the confrontation clause (U.S. Const., amend. VI) were not violated.

¶ 28                                    IV. CONCLUSION

¶ 29        In light of the foregoing, the judgment of the circuit court of Winnebago County is affirmed.

¶ 30        Affirmed.