2023 IL App (2d) 22-0201-U
No. 2-22-0201
Order filed June 27, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-2803 |
| LUIS F. ROSALES, | ) ) | Honorable Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The evidence was sufficient to convict the defendant of criminal sexual assault. The trial court's evidentiary determinations were not improper and the defendant was not denied the effective assistance of counsel.

¶ 2    Following a jury trial, the defendant was found guilty of two counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(1), 1.20(a)(2) (West 2016)). On appeal, the defendant challenges the sufficiency of the evidence, argues that the admission and exclusion of certain evidence denied him a fair trial, and alleges that he was denied the effective assistance of counsel. We affirm.

¶ 3                          I. BACKGROUND

¶ 4    On December 17, 2019, the defendant was charged by information with two counts of criminal sexual assault. *Id.* Count one alleged that the defendant committed an act of sexual penetration against the victim, I.M., by the use of force, in that the defendant knowingly placed his penis in I.M.'s sex organ. Count two alleged that the defendant committed an act of sexual penetration against I.M. with knowledge that she could not give knowing consent. The charges stemmed from actions that occurred at a Halloween party at the defendant's house on October 28, 2018. Following a jury trial, the defendant was found guilty on both counts. The trial court merged the conviction on count one into count two and sentenced the defendant to 12 years' imprisonment on the latter count.

¶ 5    Prior to trial, the State filed a motion seeking to admit other-crimes evidence. Specifically, the State sought to admit testimony from another woman, L.M., that, while intoxicated and unable to give consent, the defendant had sex with her. The defendant objected, arguing that the State could not prove that the other offense actually occurred. The trial court ruled that it would allow the other-crimes evidence only if the defense made consent an issue at trial. The defendant's ultimate theory at trial was that the sex with I.M. was consensual, and L.M.'s testimony was admitted.

¶ 6    The State also filed a motion *in limine* seeking to exclude evidence that a vaginal swab taken from I.M. the morning after the alleged incident indicated a third profile in addition to the profiles of I.M. and the defendant. The State argued that admission of this evidence would violate the rape shield statute (725 ILCS 5/115-7(a) (West 2018)). The defendant argued that the evidence was exculpatory. The trial court granted the State's motion, finding that, because the defendant's theory was that the sex was consensual, the existence of the third profile was irrelevant.

¶ 7 At trial, I.M.'s mother testified that on October 28, 2018, she received a phone call in the middle of the night from I.M., who was crying and said she was raped. I.M.'s mother was at I.M.'s grandmother's house. When I.M. arrived at her grandmother's home, her mother took her to the hospital, arriving around 5 a.m.

¶ 8 I.M. testified that, on the evening of October 28, 2018, she went to a party at the defendant's home with her friend, Stephane Sarmiento. I.M. did not talk to the defendant for more than 10 minutes. After having several drinks, I.M. felt like her head was spinning so she found a bed, laid down, and fell asleep. She woke up to the defendant having vaginal sex with her. The defendant was standing and I.M.'s legs were hanging off the bed. She began screaming and pushed the defendant away. The defendant buckled his pants and left the room. I.M. then put her clothes back on. I.M. testified that she was not drinking before she arrived at the party, but she had about five drinks while at the party. She did not remember consuming anything other than alcohol. After she got dressed, she went to find Sarmiento, but instead found Giovanni Ochoa. Ochoa and his brother gave I.M. a ride to her grandmother's house. She did not tell Ochoa what happened to her.

¶ 9 Ochoa testified for the State that he arrived at the party at about 2 a.m. and there were only about 5 to 10 people there. He ended up falling asleep on a couch. He woke up when he heard I.M. screaming on the phone, telling her friend she was a "B" for leaving her behind. Because she was so upset, Ochoa asked I.M. if she needed a ride. He had been drinking so he called his brother and asked him to pick them up. He and his brother drove I.M. to her grandmother's house. They left the defendant's house at about 3:30 a.m. During the car ride, he did not think I.M. was talking to her mother because she was cursing. Ochoa did not hear I.M. say anything about being raped during the car ride.

¶ 10    Sarmiento testified that she and I.M. were driven to the party by Ochoa's brother. Sarmiento had met the defendant before. She testified that while she, I.M., and others were drinking in the bar area of the home, the defendant was sitting in the corner. When Sarmiento left the party, the only people that remained were Ochoa and his brother, the defendant, I.M., and an older man whose name she did not know. Sarmiento received a text message from Ochoa saying that I.M. had been acting weird, and that she had run away from his car and consumed cocaine. Sarmiento stated that she did not hear from I.M. again until about 8 a.m. the next day when I.M. was in the hospital.

¶ 11    Jacqueline Bingen testified that she was a sexual assault nurse examiner and was called to the hospital to examine I.M. She was not able to examine I.M. until 7:30 a.m. because I.M. was intoxicated. She had to wait until I.M. was sober to give consent to the exam. After 5 a.m., the emergency room at the hospital did a blood draw which showed that I.M. had a blood alcohol content of 0.11. A urine drug screen was also conducted and I.M. tested positive for cannabis and cocaine. Bingen began examining I.M. at about 7:30 a.m. She examined I.M.'s body and clothes and conducted a medical forensic kit, collecting vaginal swabs, blood, and urine samples. I.M. told Bingen that she woke up at the party with someone's penis inside her and she felt pain and throbbing in her vaginal area. I.M. also told her that the person had ejaculated. Bingen did not detect any bruising, bleeding, tearing, trauma, or redness on I.M.'s vaginal area. Bingen also testified that I.M. told her she had no loss of memory or consciousness that night.

¶ 12    Crime laboratory results showed that sperm cells were found in I.M.'s vaginal swab. Forensic testing showed that the sperm cells matched the defendant's DNA. On December 12, 2018, I.M. identified the defendant in a photo array as the person who sexually assaulted her. Detective Matt Thornton of the Zion police department testified that the photo of the defendant

that was used in the array was from a previous arrest in another jurisdiction. After some further questions, a sidebar was held, wherein defense counsel objected to the photo array for multiple reasons, including arguing that it was improper for the officer to indicate that the photo was from a prior arrest. The trial court overruled the objection, finding that the issue was subject to cross-examination. On cross-examination, defense counsel attempted to clarify that the photo was the result of police involvement in domestic issues between the defendant and his ex-wife.

¶ 13     L.M. testified that, in May 2018, when she was about 23 years old, she lived with her father in the basement of the defendant's home. At that time, L.M. had been dating the defendant's son, Carlos, for about two years. At the beginning of that month, she had an argument with Carlos because she caught him cheating on her. Either later that day, or the next day, she was at home alone with the defendant. They started drinking beer together at about noon and talking about L.M.'s relationship with Carlos. At some point Carlos came home and the three drank together. At about 9 p.m., Carlos went to bed and the defendant went to the liquor store to buy more alcohol. When the defendant returned, L.M. began feeling dizzy and threw up. The defendant helped L.M. to her room in the basement. L.M. remembered laying down and passing out. When she went to bed she was wearing a t-shirt, bra, sweater, jeans, socks, and shoes.

¶ 14     The next morning, L.M. woke up when the defendant knocked on her door. She was not wearing her jeans or underwear when she woke up and her vagina felt "weird." The defendant came into her room and asked if she remembered last night. She said she did not know what he was talking about. The defendant then told L.M. that she asked him to make love to her last night. She told him she never said that, and he asked if she was going to tell anyone about it. L.M. told the defendant to leave. L.M. did not report the incident until June 2019. She did not remember if the defendant placed his penis in her vagina.

¶ 15    The defendant moved for a directed finding, arguing that the State had not proved that the event between I.M. and the defendant was not consensual. The State indicated that, after reviewing the testimony and some case law, it would concede and dismiss count one. The trial court noted that the State could certainly bring a motion if it wanted, but the issue was the defendant's motion for a directed finding. The State then argued that a reasonable fact finder could conclude that there was sufficient evidence to prove both counts. The trial court denied the defendant's motion.

¶ 16    Thereafter, Vanessa Blanco and Victor Jasso testified for the defense. They both testified that they were at the Halloween party in question. There were about 20 to 30 people present and there were no arguments or other disturbances at the party.

¶ 17    Following deliberations, the jury found the defendant guilty of both counts. The trial court ordered a presentence investigation report (PSI). The PSI included a statement that the defendant complained that he was upset with his attorneys because they "steer[ed] him toward a jury trial when he specifically wanted a bench trial." The defendant filed a posttrial motion for judgment notwithstanding the verdict and a motion for a new trial challenging the sufficiency of the evidence and raising other alleged trial errors.

¶ 18    At a hearing on posttrial motions and sentencing, the trial court first conducted a preliminary inquiry, pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), into the defendant's claim about wanting a bench trial and questioned the defendant and his attorneys about the statement. The defendant stated that he told his attorneys all along that he wanted a bench trial. Defense counsel stated that he never talked to the defendant about a bench or a jury trial. He just told the defendant he would defend him in the best possible way. After filing numerous motions, and taking the court's temperature, defense counsel determined it would be best to have a jury trial. Defense counsel also stated that, after reading the PSI, he "was somewhat taken aback, ***

somewhat upset, somewhat questionable that [the defendant] said that he wanted a bench trial." Co-counsel stated that shortly before trial he had discussions with the defendant that it would be a jury trial, and that if the defendant had indicated that he wanted a bench trial, co-counsel would have submitted a waiver of jury trial and allowed a bench trial.

¶ 19    The trial court found that the defendant did not receive ineffective assistance of counsel. The trial court stated that during many pretrial hearings when the defendant was present there were discussions about whether it would be a bench or jury trial. The trial court concluded that there was nothing to suggest that the defendant was confused about whether he was having a bench or jury trial, or his rights in that regard. The trial court made statements questioning whether *Krankel* was even applicable since the defendant did not allege that defense counsel forced him to waive a certain right. Finally, the trial court found that the evidence was overwhelming and, even if trial counsel was ineffective, the defendant suffered no prejudice by having a jury trial rather than a bench trial. The trial court denied the defendant's posttrial motion. Following a sentencing hearing, the trial court merged count one into count two, and sentenced the defendant to 12 years' imprisonment on count two. The trial court denied the defendant's subsequent motion to reconsider sentence and the defendant then filed a timely notice of appeal.

¶ 20                                              II. ANALYSIS

¶ 21                                     A. Failure to Prove Force

¶ 22    The defendant's first contention on appeal is that the trial court erred in denying his motion for a directed verdict and motion for judgment notwithstanding the verdict on count one because the State failed to prove the element of force. The State argues that we cannot review this contention because the trial court did not enter a sentence on count one. We agree with the State. We cannot review a conviction on which no sentence was imposed, as there is no final judgment.

*People v. Caballero*, 102 Ill. 2d 23, 51 (1984) ("The final judgment in a criminal case is the sentence, and, in the absence of a sentence, an appeal cannot be entertained."). In this case, count one was merged into count two and the defendant was only sentenced on count two. Accordingly, we decline to address the defendant's contention that the State failed to prove the elements of count one.

¶ 23                                B. Sufficiency of the Evidence

¶ 24    The defendant's second contention on appeal is that he was not proved guilty beyond a reasonable doubt. As explained above, we do not consider whether the evidence was sufficient to prove count one, and we address only whether the evidence was sufficient to convict the defendant on count two. Count two charged the defendant with criminal sexual assault, alleging that he committed an act of sexual penetration against I.M. with knowledge that she could not give knowing consent.

¶ 25    In evaluating the sufficiency of the evidence, it is not the province of this court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The relevant question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original). *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The weight to be given to the witnesses' testimony, the determination of their credibility, and the reasonable inferences to be drawn from the evidence are all matters within the jurisdiction of the trier of fact. *People v. Smith*, 185 Ill. 2d 532, 542 (1999); *Collins*, 106 Ill. 2d at 261-62. Likewise, the resolution of any conflicts or inconsistencies in the evidence is also within the province of the fact finder. *Collins*, 106 Ill. 2d at 261-62. We will set aside a criminal conviction only "where the evidence is so unreasonable,

improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *Smith*, 185 Ill. 2d at 542.

¶ 26 To prove defendant guilty of criminal sexual assault, the State was required to prove beyond a reasonable doubt that defendant (1) committed an act of sexual penetration and (2) knew that I.M. was unable to give knowing consent to an act of sexual penetration. See 720 ILCS 5/11-1.20(a)(2) (West 2016). In this case, the defendant conceded that he committed an act of sexual penetration and asserted an affirmative defense of consent at trial. Accordingly, the only issue is whether the evidence was sufficient to prove that the defendant knew that I.M. was unable to give knowing consent.

¶ 27 Viewing the evidence in the light most favorable to the prosecution, we conclude that there was sufficient evidence for the jury to conclude that the defendant knew that I.M. was unable to give knowing consent. I.M. testified that she went to a party at the defendant's house, had too much to drink, and passed out on a bed in the defendant's home. I.M. testified that the next thing she remembered was waking up to the defendant having vaginal sex with her. She screamed and pushed him away. I.M. had a BAC of 0.11 at the hospital the next morning and tested positive for cannabis and cocaine, supporting a reasonable inference that her faculties were impaired. There was also other-crimes evidence showing that the episode with I.M. was not the first time the defendant had sex with someone who was too intoxicated to give knowing consent. Based on the evidence presented, we conclude that a rational trier of fact could have determined beyond a reasonable doubt that the defendant knew I.M. was unable to give knowing consent to an act of sexual penetration.

¶ 28 The defendant attempts to cast doubt on the sufficiency of the evidence by pointing to several alleged deficiencies in I.M.'s testimony. The defendant argues that I.M. was too

intoxicated to have a reliable memory of what occurred at the party. The defendant also argues that, if I.M. pushed him away after waking up, there was no explanation for why there was no semen found on I.M. or on her clothes. The defendant further argues that, although I.M. testified that she was screaming and upset after the encounter, Ochoa testified that he only heard I.M. screaming at a friend for leaving her at the party and that I.M. never said anything to him about being assaulted. Finally, the defendant notes that I.M. told Bingen that she had no loss of memory or consciousness, calling into question whether I.M. was really unable to give knowing consent.

¶ 29    These alleged deficiencies do not make the evidence so unsatisfactory as to raise a reasonable doubt of the defendant's guilt. The jury was fully aware of all the testimony presented and determined that the defendant knew I.M. was unable to give knowing consent. The jury heard evidence that I.M. drank to the point of passing out, that her BAC at 5 a.m. the next day was 0.11, and that she tested positive for cannabis and cocaine. It was within the province of the jury to conclude that her testimony was credible. *Collins*, 106 Ill. 2d at 262. As to the remaining contentions, the jury could have concluded that there was no semen on I.M. or her clothing because she pushed the defendant away after he ejaculated, that I.M. was more credible than Ochoa, and that I.M.'s statement to Bingen about having no loss of memory or consciousness referred to the time after she woke up being penetrated by the defendant.

¶ 30    The defendant also notes that Ochoa and two other people were at the party and the only one who observed I.M. screaming or upset was Ochoa. However, the other two people could have been gone before the offense against I.M. took place. The defendant also argues that I.M.'s testimony was inconsistent with her mother's testimony because, while I.M. testified that she told her mom immediately that she was raped, I.M.'s mother testified that I.M. only cried out after she chastised I.M. for being out past curfew. This is an inaccurate representation of I.M.'s mother's

testimony. I.M.'s mother testified that, when I.M. called her, the only question she actually asked I.M. was "what's going on" and "where are you ***?." The defendant also notes that Ochoa testified that I.M. did not say anything about being raped while he and his brother were driving her home. This was not inconsistent, as I.M. testified that she did not tell Ochoa what happened.

¶ 31   The defendant cites three cases in arguing that there was a reasonable doubt of his guilt: *People v. Herman*, 407 Ill. App. 3d 688 (2011), *People v. Yeargen*, 229 Ill. App. 3d 219 (1992), and *People v. Schott*, 145 Ill. 2d 188 (1991). In those cases, convictions were reversed because the victim's testimony was so improbable or fraught with inconsistencies that it left a reasonable doubt of the defendant's guilt. See *Herman*, 407 Ill. App. 3d at 705 (victim testimony fraught with inconsistencies and contradictions, especially with respect to the timeline of events related to the offense); *Yeargen*, 229 Ill. App. 3d at 233 (victim testimony had so many contradictions and was "contrary to the laws of human nature and experience"); and *Schott*, 145 Ill. 2d at 206-07 (victim testimony was so fraught with inconsistencies and contradictions that it raised a reasonable doubt of the defendant's guilt). These cases are clearly distinguishable from the present case as the credibility problems in those cases are not present here. We simply cannot say that I.M.'s testimony was clearly implausible or so fraught with inconsistencies and contradictions that no reasonable jury would find her credible.

¶ 32                                    C. Prior Bad Acts

¶ 33   The defendant's third contention on appeal is that the trial court erred in admitting evidence of the defendant's prior bad acts. The defendant takes issue with the admission of evidence related to the alleged sexual assault of L.M. and the admission that the defendant had a prior arrest. The defendant argues that the first issue should be reviewed for an abuse of discretion but concedes

that the second issue should be reviewed under the plain error doctrine because the issue was not preserved for review in a posttrial motion.

¶ 34                                    1. Other-crimes evidence

¶ 35    As to the first issue, the defendant argues that the alleged sexual assault of L.M. should have been excluded because there was insufficient proof that it actually happened, it was dissimilar to the charged conduct, and it was overly prejudicial.

¶ 36    The term "other-crimes evidence" refers to misconduct or criminal acts that occurred before or after the alleged charged conduct, including acts of misconduct for which the defendant was not charged or convicted. *People v. Sims*, 2019 IL App (3d) 170417, ¶ 28. Evidence of other crimes may be admissible to show a defendant's intent, *modus operandi*, identity, motive, or absence of mistake, but it is generally inadmissible to show a defendant's criminal propensity. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003); see also Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). A "[d]efendant is entitled to have his guilt or innocence evaluated solely on the basis of the charged crime" and evidence of propensity to commit the charged offense raises the risk that a jury will convict a defendant because he is a "bad person deserving punishment." *Id.*

¶ 37    However, section 115-7.3 of the Code, which applies to certain enumerated sex offenses (725 ILCS 5/115-7.3(a)(1) (West 2018)), including criminal sexual assault, allows evidence of the defendant's commission of another of the listed offenses to be admissible for "any matter to which it is relevant" (*id.* § 115-7.3(b)). "Any matter" specifically includes a defendant's propensity to commit the sex offenses enumerated by the statute. *Donoho*, 204 Ill. 2d at 176. In enacting section 115-7.3, the legislature "intended to single out sex offenders *** in recognition of the propensity of sex offenders to repeat their crimes." *People v. Childress*, 338 Ill. App. 3d 540, 549 (2003).

¶ 38    Even if other-crimes evidence is offered for a permissible purpose, it may nevertheless be precluded if its prejudicial effect substantially outweighs its probative value. *People v. Pikes*, 2013 IL 115171, ¶ 11; see also 725 ILCS 5/115-7.3(c) (West 2018). In weighing the probative value against undue prejudice, the statute provides that a court may consider the proximity in time to the charged offense, the degree of factual similarity to the predicate offense, or other relevant facts or circumstances. 725 ILCS 5/115-7.3(c) (West 2018). Other-crimes evidence must bear at least some threshold similarity to the charged offense, and as the factual similarities to the charged conduct increase, so too does the evidence's probative value. *Donoho*, 204 Ill. 2d at 184. "Where such evidence is not being offered under the *modus operandi* exception, 'mere general areas of similarity will suffice' to support admissibility." *Id.* at 184 (quoting *People v. Illgen*, 145 Ill. 2d 353, 372-73 (1991)). Whether to admit other-crimes evidence is a decision that rests in the sound discretion of the trial court. *People v. Bochenek*, 2020 IL App (2d) 170545, ¶ 56. An abuse of discretion occurs where the trial court's determination is arbitrary, fanciful, or unreasonable. *Donoho*, 204 Ill. 2d at 182.

¶ 39    We hold that the trial court did not abuse its discretion in admitting L.M.'s testimony. The statutory requirements of section 115-7.3 were satisfied. The defendant committed the act against L.M. about five months prior to the charged offense, thus the two offenses were relatively close in time. The two offenses were also similar. Both victims were young, became intoxicated at the defendant's house after drinking too much alcohol, and fell asleep in the defendant's residence with their clothes on. When both of the victims awoke, their clothes were partially or fully removed. The uncharged conduct against L.M. was relevant to show the defendant's intent and propensity to take advantage of young and intoxicated women. The trial court noted that the defendant was raising the defense of consent and found the evidence of the uncharged conduct

against L.M. to be relevant to the defendant's intent and propensity to commit sexual assault. The record shows that the trial court weighed the probative value against the prejudicial effect.

¶ 40    The defendant argues that the testimony against L.M. should have been excluded because there was insufficient evidence to prove that the incident with L.M. actually occurred. The defendant points out that L.M. did not wake up with the defendant in her bed or his clothes in her room and she did not remember having sex with the defendant. Nonetheless, there was sufficient evidence for a jury to conclude that the sexual assault occurred. L.M. testified that she drank to the point of passing out, that the defendant helped her to her room, and when she woke up the next morning her pants and underwear were off and her vagina felt "weird." The defendant knocked on her door and informed her that they had "made love." L.M. denied that she had ever asked the defendant to have sex with her.

¶ 41    In arguing that the other-crimes evidence was not sufficiently similar to the charged offense for its probative value to outweigh the prejudice caused by its admission, the defendant relies on *People v. LaMonica*, 2021 IL App (2d) 200136. In that case, the defendant was charged with aggravated criminal sexual assault by committing an act of sexual penetration on the victim by use of force. *Id.* ¶ 4. Following a jury trial, the defendant was found guilty. *Id.* ¶ 1. On appeal, the defendant argued that the evidence was insufficient to prove force or lack of consent (*id.* ¶ 34) and that the trial court erred in admitting the other-crimes evidence (*Id.* ¶ 48). This court agreed.

¶ 42    This court first found that the evidence was not sufficient to establish that the defendant used or threatened force or to disprove the defense of consent. *Id.* ¶ 46. This court noted that the victim testified that the defendant had not threatened her, held her down, or grabbed her so hard she could not release his grip. *Id.* We thus held that her perception of a threat was not reasonable.

*Id.* Further, we noted that the "[the victim's] testimony was inconsistent about whether she viewed defendant as a physical threat; thus, it confused the jury." *Id.* ¶ 52.

¶ 43 This court also concluded that the trial court had erred in admitting other-crimes evidence. We explained that, because three witnesses were called to establish the alleged other-crimes evidence, the allegations of the other crime were unproven, and the similarities between the charged offense and other-crimes evidence were low, "the risk of undue prejudice to defendant clearly outweighed the probative value, particularly in light of the extensiveness of the evidence presented on the incident with [the other alleged victim]." *Id.* ¶ 54. We commented that the other-crimes evidence took up most of the trial. *Id.* In discussing the lack of similarity, this court noted the victim's testimony that the defendant penetrated her in the evening, after their date, while she was drunk and that the defendant quickly left her apartment. *Id.* ¶ 53. The other-crimes evidence included testimony from another woman that, after a date with the defendant, they went back to her apartment. She went into her bedroom, got undressed, and went to sleep. The next morning, while she was sober, the defendant forcefully penetrated her while on top of her and stayed for about an hour after the alleged assault and wanted to talk to her. *Id.* This court concluded that the two incidents bore little resemblance in any significant way. *Id.* ¶ 54.

¶ 44 The defendant's reliance on *LaMonica* is unpersuasive. Unlike *LaMonica*, the victim's testimony was not inconsistent or confusing and the other-crimes evidence did not take up most of the trial. Further, as explained above, the two incidents at issue in this trial bore a striking resemblance. Both involved the defendant forcing himself on young, intoxicated women in his home while they were essentially passed out. The defendant argues that the facts were dissimilar because L.M. was five years older than I.M., L.M. knew the defendant and had been drinking with him all day, and L.M. did not have any memory of sexual intercourse with the defendant.

However, if the State is not offering other-crimes evidence to show *modus operandi*, general areas of similarity are sufficient to support admissibility. *Donoho*, 204 Ill. 2d at 184. In reviewing the trial court's decision for an abuse of discretion, we hold that the similarities are sufficient to support admissibility of the other crimes evidence.

¶ 45                                    2. Prior Arrest

¶ 46    The defendant's next contention is that the trial court erred in admitting Officer Thornton's testimony that the defendant's photo used in the photo array was from a previous arrest in a different jurisdiction. The defendant acknowledges that this issue was not raised in his posttrial motion and requests that we review it for plain error. The plain error doctrine allows "a reviewing court to reach a forfeited error affecting substantial rights" in certain circumstances. *People v. Herron*, 215 Ill. 2d 167, 178 (2005). In order to successfully qualify for application of the plain error doctrine, a defendant must first show that the trial court committed a clear or obvious error. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010); *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). After meeting this threshold, the defendant must then show either that the evidence was closely balanced, or that the error was so egregious as to deny the defendant a fair trial. *Hillier*, 237 Ill. 2d at 545. If the defendant cannot meet this burden, then the argument remains forfeited. *Id.*

¶ 47    In this case, it was error to admit testimony of the defendant's previous arrest. See *People v. Warmack*, 83 Ill. 2d 112, 128 (1980) (holding that the error in revealing a prior arrest is obvious). However, the defendant can still not establish plain error as the evidence was not closely balanced. The defendant conceded that he had intercourse with I.M. but argued that it was consensual. I.M. testified that she passed out at a party and was fully clothed. When she woke up some point later, her pants were pulled down and the defendant was penetrating her vagina. She testified that it was not consensual and as soon as she became conscious and realized what was happening, she pushed

the defendant away. As explained above, I.M.'s testimony was not so fraught with inconsistencies or contradictions that it raised a reasonable doubt of the defendant's guilt.

¶ 48     Further, the admission of a prior arrest was not so prejudicial as to deny the defendant a fair trial. Defense counsel had the opportunity to cross-examine Thornton about the alleged prior arrest. Specifically, on cross-examination, Thornton testified that he received the photo for the array from the Waukegan police department. The following colloquy ensued:

> "Q. [Defense attorney]: You received a photograph from Waukegan?
>
> A. Correct.
>
> Q. And when you received it from Waukegan, you determined that there was a complaint from [the defendant's] ex-wife concerning arresting [the defendant] when they made that phone call; would that be correct?
>
> A. I remember a complaint, possibly back and forth complaints. I don't remember that he was arrested.
>
> ****
>
> Q. Well, when you first talked to him and sat down with him, you asked him do you know what this is about; correct?
>
> A. Correct.
>
> Q. And he said to you it must come from his ex-wife; would that be correct?
>
> A. Yes, he said that."

The cross-examination thus indicated that the prior arrest was in some way related to the defendant's ex-wife. Further, the reference to the prior arrest did not indicate to the jury that the defendant had a conviction for a prior crime. There is no reasonable probability that the outcome of the trial would have been different absent the testimony about the prior arrest. Accordingly, we

decline to find plain error under the circumstances in this case and the defendant's argument thus remains forfeited.

¶ 49                 D. Right to Present a Defense

¶ 50    The defendant's fourth contention on appeal is that the trial court abused its discretion when it refused to allow evidence that there was a third DNA profile found on I.M.'s vaginal swab and testimony that I.M. had a sexual encounter with a person other than the defendant on the night in question. The defendant notes that I.M.'s vaginal swabs revealed the DNA profile of I.M., the DNA profile of the defendant, and a possible third DNA profile of an unknown person. The defendant argues that the DNA evidence was relevant to the issue of whether the encounter between the defendant and I.M. was consensual because it could have raised the very real possibility that a person other than the defendant could have been the perpetrator of the rape. The trial court found that the evidence was not relevant under the rape shield statute.

¶ 51    The rape shield statute provides:

> "In prosecutions for *** criminal sexual assault *** the prior sexual activity or the reputation of the alleged victim *** is inadmissible except (1) as evidence concerning the past sexual conduct of the alleged victim *** with the accused when this evidence is offered by the accused upon the issue of whether the alleged victim *** consented to the sexual conduct with respect to which the offense is alleged; or (2) when constitutionally required to be admitted." 725 ILCS 5/115-7 (West 2014).

The defendant did not seek to admit evidence that he had a prior sexual relationship with I.M., so the question is whether the admission of evidence that I.M. engaged in sexual activity with someone other than the defendant on the night of the sexual assault was constitutionally required.

¶ 52     "The 'constitutionally required' exception to the rape-shield statute 'should be construed narrowly, but also fairly.' " *People v. Summers*, 353 Ill. App. 3d 367, 374 (2004) (quoting *People v. Santos*, 211 Ill. 395, 416-17 (2004) (McMorrow, C.J., dissenting)).  In order to avoid harassing or humiliating the complaining witness, "[m]inimally relevant evidence of prior sexual activity should not be admitted." *Id.*  Indeed, evidence of the alleged victim's history "is not 'constitutionally required to be admitted' unless it would make a meaningful contribution to the fact-finding enterprise." *People v. Maxwell*, 2011 IL App (4th) 100434, ¶ 76 (quoting 725 ILCS 5/115–7(a) (West 2010)).  The rape shield statute must not be applied to obscure relevant evidence that bears directly on guilt or innocence. *People v. Johnson*, 2014 IL App (2d) 121004, ¶ 42.  We will not disturb the trial court's ruling to bar evidence under the rape-shield statute unless the ruling was an abuse of discretion. *Id.*  A trial court abuses its discretion when it acts arbitrarily or when no reasonable person would take the view adopted by the trial court. *Id.*

¶ 53     The trial court did not abuse its discretion here because the defendant failed to establish that the existence of a third DNA profile was constitutionally required.  When arguing the motion *in limine*, defense counsel stated that he believed the third DNA profile belonged to Ochoa and that, while he had not received a formal statement from Ochoa, he believed Ochoa would testify that he (Ochoa) had a sexual relationship with I.M. at the same time as the defendant.  When the trial court questioned what that meant, defense counsel stated that he was not sure of the chronological order of when I.M. had sex with Ochoa, whether the defendant and Ochoa took turns, or if Ochoa was in the room at the same time as when the defendant was penetrating I.M.  The trial court concluded that whether I.M. had consensual sex with someone else was not relevant to the defendant's case.  Further, the trial court stated that it would need a more definitive proffer of what Ochoa's testimony would be and what the defense theory of the case would be before it

could find the complained of evidence constitutionally required. The trial court stated that defense counsel could "further investigate that by talking to Ochoa, by talking to his client, by doing all sorts of different things to find out exactly what the defense theory of what the facts of this are." The trial court thus impliedly agreed to revisit the issue had the defendant presented more evidence, but the defendant never did so. We cannot say that no reasonable person would agree with the position adopted by the trial court. As the defendant had not procured a formal statement from Ochoa, the argument that I.M. had consensual sex with a third person and thus with the defendant was pure speculation and not a meaningful contribution to the factfinding enterprise.

¶ 54     On appeal, the defendant argues that the evidence of the third DNA profile was meaningful because it could have established that I.M.'s sexual encounter with the defendant was consensual and that I.M. misidentified the actual perpetrator that was penetrating her when she woke up. The defendant never made this argument below and it is therefore forfeited. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The theory argued below was only that the third DNA profile would have been relevant to showing that I.M. was having consensual sex with multiple partners. The defendant never advanced the argument that it wanted to use the evidence to establish a misidentification of the rapist.

¶ 55                                          E. Ineffective Assistance of Counsel

¶ 56     The defendant's final contention on appeal is that he received ineffective assistance of counsel. The defendant argues that trial counsel was ineffective in proceeding to a jury trial despite the defendant's express desire for a bench trial. The defendant also argues that counsel was ineffective for failing to preserve, in a posttrial motion, the trial court's error in allowing evidence of an unrelated previous arrest to explain how a photo was acquired for the photo array used in this case.

¶ 57    Under *Strickland v. Washington*, 466 U.S. 669 (1984), a defendant arguing ineffective assistance of counsel must show not only that his or her counsel's performance was deficient but also that the defendant suffered prejudice as a result. *People v. Houston*, 226 Ill. 2d 135, 143 (2007). Specifically, under the two-prong *Strickland* test, "a defendant must show that (1) his counsel's performance *** fell below an objective standard of reasonableness, and (2) *** but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *Id.* at 144. Because a defendant must satisfy both prongs of the *Strickland* test, the failure to establish either is fatal to the claim. *Strickland*, 466 U.S. at 687.

¶ 58                                              1. Bench Trial

¶ 59    The defendant first argues that trial counsel was ineffective in proceeding to a jury trial despite his express desire for a bench trial. The trial court addressed this argument in response to a statement in the defendant's presentence investigation report, where the author of the report stated that the defendant "complained about his attorney steering him toward a jury trial when he specifically wanted a bench trial." The trial court interpreted this as a posttrial *pro se* claim of ineffective assistance of counsel and appropriately conducted a preliminary *Krankel* inquiry.

¶ 60    *Pro se* posttrial claims alleging ineffective assistance of counsel are governed by the common-law procedure that has developed from our supreme court's decision in *Krankel*. *People v. Jackson*, 2020 IL 124112, ¶ 95. *Krankel* is triggered whenever a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel. *People v. Jolly*, 2014 IL 117142, ¶ 29. After a defendant raises such a claim, the trial court must employ a two-step procedure. *Jackson*, 2020 IL 124112, ¶ 97. First, the trial court conducts a preliminary *Krankel* inquiry, which is an examination of the factual basis underlying the defendant's claim. *Id.* During this preliminary evaluation, the trial court is permitted to question defense counsel about the facts and

circumstances surrounding the defendant's allegations, engage in a discussion with the defendant, or rely on its own knowledge of counsel's performance at trial and the insufficiency of the defendant's allegations. *People v. Ayres*, 2017 IL 120071, ¶ 12. If, during this preliminary inquiry, the trial court determines that the defendant's claim lacks merit or pertains only to matters of trial strategy, the trial court may deny the *pro se* motion. *Id.* ¶ 11. A claim lacks merit if it is conclusory, misleading, or legally immaterial, or does not bring to the trial court's attention a colorable claim of ineffective assistance of counsel. *People v. Robinson*, 2015 IL App (1st) 130837, ¶ 71.

¶ 61 If, however, the trial court finds that the allegations demonstrate "possible neglect of the case," new counsel (*i.e.*, *Krankel* counsel) must be appointed to represent the defendant at an adversarial and evidentiary hearing on the defendant's claims. *Ayres*, 2017 IL 120071, ¶ 11. The appointment of new counsel avoids any conflict of interest that might arise if trial counsel was forced to justify his or her actions contrary to the defendant's position. *Jackson*, 2020 IL 124112, ¶ 97.

¶ 62 The applicable standard of review depends on whether the trial court addressed the merits of the defendant's *pro se* posttrial claim of ineffective assistance of counsel. *Id.* ¶ 98. The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance. *Id.* Accordingly, if the reviewing court is asked to determine whether the trial court properly conducted a *Krankel* inquiry, the standard of review is *de novo*. *Id.* If, on the other hand, after performing the *Krankel* inquiry the trial court reaches a determination as to the merits of the defendant's *pro se* ineffective assistance of counsel claim, the reviewing court may reverse only if the trial court's decision was manifestly erroneous, *i.e.*, the error was clearly evident, plain, and indisputable. *Id.* In the present case, the trial court conducted a preliminary *Krankel* hearing and denied the defendant's *pro se* claim of

ineffective assistance of counsel. Accordingly, we review the trial court's determination for manifest error. *Id.*

¶ 63    Under the United States Constitution (U.S. Const., amends. VI, XIV) and the Illinois Constitution (Ill. Const. 1970, art. I, §§ 8, 13) a defendant is guaranteed the right to a jury trial. Under the Illinois Constitution, that right includes the right of a defendant to waive a jury trial. *People v. Barkes*, 399 Ill. App. 3d 980, 988 (2010); see also *People v. Brown*, 2013 IL App (2d) 110327, ¶ 18 (a criminal defendant has a state constitutional right to a bench trial). The right to waive a jury trial and choose a bench trial is within the sole prerogative of the defendant and not his counsel. *Id.* The failure to accept a defendant's waiver of a trial by jury is generally considered reversible error. *Id.* If a defendant raises a claim of ineffective assistance of counsel on the basis that trial counsel impeded his right to waive a jury trial, prejudice under *Strickland* " 'is presumed if there is a reasonable probability that the defendant would have waived a jury trial in the absence of the alleged error.' " *Id.* (quoting *People v. McCarter*, 385 Ill. App. 3d 919, 943 (2008)). Whether or not the outcome of a bench trial would have been the same as the jury trial has no relevance to the issue of prejudice under *Strickland*. *Id.*

¶ 64    In the present case, the trial court's determination was not manifestly erroneous. Although defense counsel did not remember talking about a bench or jury trial with the defendant, the record indicates there were multiple court appearances with the defendant present where the trial court asked whether it would be a bench or jury trial and instructed defense counsel to discuss the issue with the defendant. At the preliminary *Krankel* inquiry, both defense counsel and co-counsel indicated that the defendant never told them prior to trial that he wanted a bench trial. Defense counsel stated that he was taken aback and thought it was questionable when he saw the defendant's statement that he wanted a bench trial in the PSI. Co-counsel stated that he discussed

with the defendant that it would be a jury trial and if the defendant had indicated that he wanted a bench trial co-counsel would have submitted a jury waiver. The statements of defense counsel and co-counsel do not establish that they overrode the defendant's desire for a bench trial. In finding the defendant's claim to be without merit, the trial court essentially found defense counsel and co-counsel more credible than the defendant.

¶ 65 The defendant argues that the trial court's ruling was erroneous because there was no evidence that he was informed that it was his choice whether to proceed with a jury trial or a bench trial or that he knew the difference between the two options. This argument is forfeited. See *Enoch*, 122 Ill. 2d at 186 (arguments not raised in the trial court are generally forfeited on appeal). As set forth above, the defendant did not make any such argument in his presentence investigation or during the preliminary *Krankel* hearing. The defendant stated only that he was "steered" toward a jury trial and that he had told defense counsel all along that he wanted a bench trial.

¶ 66 Finally, the defendant argues that the trial court's statements, that (1) the defendant's desire for a bench trial may not fall within the purview of *Krankel* and (2) the claim failed because a bench trial would not have changed the outcome, exhibited a misunderstanding of the law. We agree that some of the trial court's statements were improper. A trial counsel's refusal to allow a defendant to exercise his choice to a bench trial can be ineffective assistance of counsel. See *Barkes*, 399 Ill. App. 3d at 988. Further, the issue is not subject to a harmless-error analysis because "the denial of one's right to a bench trial is a 'structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *McCarter*, 385 Ill. App. 3d at 943 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). "Thus, the fact that the outcome of the case might have been the same if defendant had received a bench trial is not relevant to the question of prejudice under *Strickland*." *Id.* at 944. Accordingly, the trial

court's statements questioning whether *Krankel* applied and noting that the defendant did not suffer prejudice, because a bench trial would have had the same outcome, were misplaced. Nonetheless, as explained above, the preliminary inquiry revealed that defense counsel and co-counsel did not impede the defendant's right to a bench trial.

¶ 67   Moreover, *People v. Powell*, 281 Ill. App. 3d 68 (1996), cited by the State, supports our determination.  In *Powell*, the defendant filed a *pro se* posttrial claim alleging that trial counsel was incompetent because he told trial counsel that he wanted to have a bench trial but trial counsel ignored his repeated requests. *Id.* at 70-71.  The trial court held a hearing where both the defendant and trial counsel testified that the defendant said he wanted a bench trial but counsel advised against it. *Id.* at 71.  The trial court denied the motion, finding that advising the defendant to take a jury trial was within the realm of reasonable trial strategy and noting that the defendant never advised the trial court that he wanted a bench trial. *Id.* at 72.  On appeal, the reviewing court affirmed the trial court's determination, emphasizing that "a defendant who wishes a bench trial instead of a jury trial must make his position known to the trial court if his trial attorney fails to do so." *Id.* at 73.

¶ 68   The present case presents facts similar to those in *Powell*.  As in *Powell*, the present defendant alleged that he told trial counsel that he wanted a bench trial but was steered toward a jury trial.  Also as in *Powell*, the defendant stood silent when defense counsel informed the trial court that it would be a jury trial and during the entire jury selection process.  When defense counsel refuses or fails to inform the trial court that the defendant wishes to proceed by bench trial, "the defendant is obliged to make his wish to waive the jury known to the trial court." *People v. Downs*, 2017 IL App (2d) 121156-C, ¶ 58 (citing *Powell*, 281 Ill. App. 3d at 73); see also *People*

*v. Brown*, 2013 IL App (2d) 110327, ¶ 21 (the onus to assert the right to a bench trial is on a criminal defendant). Accordingly, as in *Powell*, the defendant's claim has no merit.

¶ 69    Cases cited by the defendant are unpersuasive. In *People v. Townsend*, 2020 IL App (1st) 171024, the defendant, in a *pro se* postconviction petition, raised a claim of ineffective assistance of counsel alleging that he told trial counsel that he wanted a bench trial but she told him that "she was running the show and that [the defendant] was getting a jury trial." *Id.* ¶ 14. The trial court summarily dismissed the petition, finding that, even if it had been a bench trial, the result of the trial would have been the same. *Id.* ¶ 15. On appeal, the reviewing court reversed and remanded for second stage proceedings, holding that the petition set forth an arguable claim that defense counsel told the defendant that he did not have the choice to waive a jury trial. *Id.* ¶ 43. In *Barkes*, 399 Ill. App. 3d at 988, this court reversed the second-stage dismissal of the defendant's postconviction petition, holding that allegations that the defendant told trial counsel that he wanted a bench trial but that trial counsel refused and told the defendant she was "running the show" entitled the defendant to an evidentiary hearing on the claim. *Id.*

¶ 70    In *McCarter*, 385 Ill. App. 3d at 926, in a posttrial motion, the defendant alleged that trial counsel failed to heed his wish for a bench trial. The trial court made limited inquiry and denied the motion, finding that a bench trial would have had the same result. *Id.* at 927. On direct appeal, the reviewing court noted that, with regard to being denied the right to a bench trial, whether a bench trial would have had the same result as the jury trial was not relevant to the question of prejudice under *Strickland*. *Id.* at 943-44. The reviewing court held that the trial court's "cursory" examination of the defendant's allegation was insufficient, and remanded the case for the trial court to either clarify why it may have implicitly found the claim "spurious on its face" or make further preliminary inquiry under *Krankel*. *Id.* at 944.

¶ 71    *Townsend* and *Barkes* are distinguishable because they involved first and second stage dismissals of postconviction petitions and thus, unlike the present case that included a preliminary *Krankel* inquiry, there had yet to be any input from trial counsel. Further, the allegations in those cases are not similar to this case. In both of those cases, the defendants alleged that they requested a bench trial but were told that trial counsel was "running the show." Thus, the allegations in those cases were that the defendants did not know they had the choice to waive a jury trial. In this case, the defendant alleged only that he was "steered" toward a jury trial and that he told defense counsel that he wanted a bench trial. The defendant did not allege that he did not know he had the choice to waive a jury trial and the trial court found that, based on pretrial hearings, the defendant was well aware of his rights with regard to a bench trial. *McCarter* is distinguishable because in that case, the trial court failed to conduct a preliminary *Krankel* inquiry. In the present case, the trial court conducted a preliminary *Krankel* inquiry and concluded that the defendant's claim was without merit.

¶ 72                              2. Prior Arrest

¶ 73    Finally, the defendant argues that defense counsel was ineffective in failing to raise, in a posttrial motion, the claim that the trial court erred in admitting evidence of a prior arrest. The defendant argues that he was prejudiced because that failure resulted in this court reviewing the error only for plain error. The defendant argues that if the issue was raised in a posttrial motion, the trial court likely would have granted a new trial and, if not, this court would have reviewed the issue on appeal under an abuse of discretion standard and ordered a new trial.

¶ 74    This argument is without merit. As stated by our supreme court:

        "Plain-error review under the closely-balanced-evidence prong of plain error is

        similar to an analysis for ineffective assistance of counsel based on evidentiary error insofar

as a defendant in either case must show he was prejudiced: that the evidence is so closely balanced that the alleged error alone would tip the scales of justice against him, *i.e.*, that the verdict "may have resulted from the error and not the evidence" properly adduced at trial (see *People v. Herron*, 215 Ill.2d 167, 178 \*\*\* (2005) (plain error)); or that there was a "reasonable probability" of a different result had the evidence in question been excluded (see *Strickland*, 466 U.S. at 694 \*\*\*)." *People v. White*, 2011 IL 109689, ¶ 133.

As explained above, the defendant failed to establish that the admission of the prior arrest resulted in plain error. The evidence was not so closely balanced that it tipped the scales of justice against him and the error did not deprive him of a fair trial. The defendant's claim of ineffective assistance is similarly without merit because, even if defense counsel had raised the subject issue in a posttrial motion, there is no reasonable probability that the outcome of the proceeding would have been different. The failure to raise the argument thus did not prejudice the defendant. *Strickland*, 466 U.S. at 694.

¶ 75                                III. CONCLUSION

¶ 76    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 77    Affirmed.